# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Criminal No. 5:23CR00006 |
| ) | |
| HECTOR MANUEL ESPINOSA ) | |

**UNITED STATES' MOTION TO RECONSIDER AND TO DISQUALIFY ATTORNEYS**

The United States, by counsel, requests this Court reconsider its Order of December 23, 2024, ECF No. 214, and moves to disqualify attorneys Sandi Rhee and Robert Feitel (collectively "Defense Counsel") from any further representation of defendant Hector Manuel Espinosa in the above-styled matter. Evidence establishes that Defense Counsel have acknowledged a clear violation of the Virginia Rule of Professional Conduct 4.2 in this case by having an *ex parte* communication with a party they knew to be represented about the matter in which he was represented, thereby creating a conflict for themselves in this case both due to their misconduct and because they have positioned themselves to become witnesses in this case. Because their misconduct directly relates to the disclosure they sought in their December 20, 2024, motion, ECF No. 213, this Court should reconsider its Order directing the United States to turn over the report of interview at issue to these Defense Counsel at this time.

**I.   Factual Background**

Defense Counsel currently represent Espinosa in the instant drug-trafficking case. A jury trial was held in Harrisonburg, Virginia in November 2024. On November 21, 2024, after a four-day trial, Espinosa was convicted of drug and firearm offenses. During trial, the government

1

presented several witnesses, including Cooperator A.[1] At trial, Cooperator A, who was extensively cross-examined by Defense Counsel, maintained throughout his testimony that Espinosa provided him with methamphetamine on two separate occasions. Cooperator A's testimony was largely corroborated by other evidence at trial, including Espinosa's own statements made to Cooperator A *vis-a-vis* Facebook text and audio messages. It was clear throughout the trial and from pretrial filings that Cooperator A, a co-defendant of Espinosa, was represented by attorney Andrew Graves and that Defense Counsel was aware of this representation. In an email dated December 6, 2024, from Defense Counsel to attorney Graves, Defense Counsel acknowledged they knew, in fact, that Graves represented Cooperator A. Exhibit A.[2]

After trial, both Cooperator A and Espinosa were returned to the Harrisonburg Regional Jail, with a separation order in place. Although being held in separate jail pods, Cooperator A has reported that, within a couple of days of returning to the jail, other inmates in his pod were telling him that Espinosa had put the word out in the jail that he wanted Cooperator A assaulted. As a result of this information, Cooperator A requested of jail staff that he be placed in the segregation wing of the facility. Per his request, Cooperator A was moved to segregation.

The facts of Espinosa' movements at the jail are still under investigation and not entirely clear. However, at some point, Espinosa found himself in the same segregation block of the jail as Cooperator A. Though not able to have physical contact, Cooperator A and Espinosa were apparently within earshot of one another. According to Cooperator A, Espinosa knew of

---

[1] Because of his cooperation, all references herein to this witness will be to "Cooperator A."
[2] Both Exhibit A and Exhibit B to this motion have been redacted to prevent disclosure of Cooperator A's name.

Cooperator A's presence in the block and began to threaten him and his family due to his cooperation in this case. Cooperator A has reported, among other things, that Espinosa advised him that if he would say that he lied at trial then Espinosa would not seek to have him harmed and that he, Cooperator A, would be safe at whatever jail he was later housed.

Cooperator A was removed from segregation on December 6, 2024. As Cooperator A was being removed from the segregation unit, Espinosa provided Cooperator A the cellphone number to his attorney, Sandi Rhee, and instructed Cooperator A to call attorney Rhee and indicate that he lied at trial. Fearing for his safety and that of his family, Cooperator A called attorney Rhee's cellular phone on December 6, 2024 ("December 6th call").

Because attorney Rhee's cell number was listed as an "attorney number" in the jail phone system, the call between Cooperator A and attorney Rhee was not recorded, and the specific contents of the call are known only to Cooperator A and Defense Counsel. However, attorney Rhee confirmed in an email sent shortly after the call to Cooperator A's attorney that the call took place and that a substantive communication occurred. In the email, dated December 6, 2024, at 4:42 p.m., attorney Rhee wrote:

> I am writing to advise you that today at 3:34 pm, your client [name redacted here, but the true name of Cooperator A] called me on my cell phone on the jail recorded line. I happened to be with my husband and co-counsel Robert Feitel and put Mr. [Cooperator A] on speaker phone. *We explained to him that he was represented and that if he wished to initiate a conversation that we would listen to him; that the decision was his* (emphasis added). He explained to us that he wanted to meet with us in person and that he wanted us to know that he "lied" and that he "wanted to make it right with Hector."
>
> We told Mr. [Cooperator A] that we would notify you immediately about this phone call to us and his request for us to visit him in jail.

3

> We also told him to contact you to alert you of his desire to meet and speak with us. He told us that you were already aware of his decision, but he was unable to reach you today by phone, and he asked us to contact you.

Exhibit A.

Andrew Graves, counsel for Cooperator A, responded to attorney Rhee's email indicating he had met with Cooperator A since the trial and that Cooperator A had never expressed such sentiments to him and that he was "highly suspicious" of this information. *Id*.

On the evening of December 6, 2024, the undersigned was contacted by attorney Graves and advised of the threats made by Espinosa and the fearful state of Cooperator A. Ultimately steps were taken to ensure Cooperator A's safety by moving both Cooperator A and Espinosa to separate facilities.

On December 10, 2024, at 8:12 a.m., attorney Graves sent a response to a follow-up email from Defense Counsel in which Defense Counsel sought a meeting with Cooperator A. In his response, attorney Graves, wrote:

> I have spoken in detail with [Cooperator A] and he does not wish to speak with you, or anyone. Even if he says he does, or initiates on his own, I do not authorize any such communications. Further, I want to be clear that I have never permitted anyone to contact or speak with him, absent my express permission. I will advise you in greater detail as soon as I get some inquiries answered of my own regarding this situation. I hope those will come sometime today.

Exhibit B.

Later on December 10, 2024, undersigned counsel and law enforcement met with Cooperator A, along with attorney Graves, to interview him regarding post-trial *ex parte* contact with Espinosa and Defense Counsel. Cooperator A advised he had called Defense Counsel and

4

said he wished to recant his testimony and confess that he had lied at trial, but he stated he had made those statements because he was threatened by the defendant and feared for his life and that of his family. During the interview, Cooperator A reaffirmed that his trial testimony was truthful.

A DEA-6 Report of Interview was prepared by TFO Seth Foster. Defense Counsel has filed a motion to compel the release of this report to them. ECF No. 213. On December 23, 2024, while the United States was in the process of preparing this instant Motion, this Court granted Defense Counsel's motion and ordered the government to produce the report of its December 10, 2024, interview with Cooperator A and reports of any additional or related interviews no later than January 3, 2025. ECF No. 214.

## II.   Defense Counsel have a Nonwaivable Conflict in this Case and Must be Disqualified from Further Representation of Espinosa.

### A.   Counsel Violated the Virginia Rule of Professional Conduct 4.2.

There is no doubt under these facts that Defense Counsel violated Virginia Rule of Professional Conduct 4.2. When an attorney knows a person is represented on a matter, Rule 4.2 prohibits the attorney from communicating with that person about that the matter, unless they have consent or are otherwise authorized by law to do so:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Va. Rules of Prof'l. Conduct R. 4.2. The fact that the represented person may initiate or consent to the communication is irrelevant; the communication is still prohibited. Comment [3] to Rule 4.2 clearly directs that, when a represented person initiates contact, the lawyer must "immediately terminate communication" unless the person is seeking a second opinion or replacement counsel:

> The Rule applies even though the represented person initiates or consents to the communication. A lawyer must *immediately terminate* communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this Rule. A lawyer is permitted to communicate with a person represented by counsel without obtaining the consent of the lawyer currently representing that person, if that person is seeking "a second opinion" or replacement counsel.

*Id*. at Comment [3] (emphasis added). There are no facts known to the United States to suggest Cooperator A was seeking a "second opinion" or replacement counsel.

Notwithstanding the clear dictates of Rule 4.2, Defense Counsel—by their own admission—accepted a phone call from Cooperator A, advised him they were willing to listen to him, and erroneously stated it was "his" choice if he (Cooperator A) wanted to speak with them. Exhibit A. Cooperator A has affirmed to the United States he did in fact proceed to have a substantive communication with Defense Counsel about the facts of this case—a matter on which he is represented. This evidence establishes that Defense Counsel failed to abide by the clear mandate of Comment 3 that they terminate the conversation and obtain the consent of Cooperator A's lawyer before engaging in a conversation with him.

Critically, Defense Counsel's violation of the Virginia Rules was not without consequences to Cooperator A. Cooperator A made uncounseled statements that have the potential to greatly impact the outcome of his own case and could subject him to additional charges. Additionally, Defense Counsel's conduct has directly and seriously interfered with attorney Graves' representation of Cooperator A.

In addition, Defense Counsel's violation of the Virginia Rules of Professional Conduct significantly impacts their ability to continue effectively and neutrally advocating on behalf of

Espinosa. Their misconduct can, and should, be a matter of investigation by this Court and the Virginia Bar. And, they cannot effectively defend themselves against allegations of misconduct of this nature in this case and effectively represent Espinosa.

The right to legal representation "that is free from conflicts of interest" is a "necessary corollary to" the right to effective assistance of counsel guaranteed by the Sixth Amendment. *Fullwood v. Lee*, 290 F.3d 663, 688–89 (4th Cir. 2002) (internal quotation marks omitted). In addition, Virginia Rule 1.7 provides that a conflict of interest exists whenever there is a significant risk that a personal interest of the lawyer may materially limit the representation of the client:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by *a personal interest of the lawyer*.

Rule 1.7 (emphasis added). Comment 8 of Rule 1.7 further explains how to evaluate when a disqualifying conflict may arise focusing on the "likelihood that a conflict will eventuate and. . . whether it will materially interfere with the lawyer's independent professional judgment":

> Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

*Id.*

Here, Defense Counsel's loyalty is impaired by their potentially adverse interests that arise because of their violation of the Virginia Rules of Professional Conduct. Because Defense Counsel's own conduct is now an issue in this case, and they now have a personal interest in the outcome of matters pending before this Court in this case. They should be disqualified from continued representation of Espinosa.

### B. Counsel Have Become Necessary Witnesses in This Case and Cannot Continue their Representation of Espinosa.

Because no recording exists of the December 6th phone call between Defense Counsel and Cooperator A, Defense Counsel have made themselves necessary witnesses in this matter, which also requires their disqualification from this case.

Virginia Rule 3.7 provides that a lawyer may not be both an advocate and a witness, except under limited circumstances which do not exist here:

> (a) A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in this case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

Va. Rules of Prof'l. Conduct R. 3.7.

According to Cooperator A, he told Defense Counsel during the December 6th phone call that his trial testimony in this case was untruthful. It is the understanding of the United States that the phone call was not recorded by the jail because that call was placed to an approved "attorney

8

number," and thus no recording exists. Therefore, the only evidence about the nature and content of that call will be the testimony of Cooperator A and the testimony of Defense Counsel. Cooperator A has acknowledged to law enforcement that he initiated the December 6th phone call after receiving Defense Counsel's cellphone number from Espinosa. But, he has also stated the information he told Defense Counsel in the call is untrue and that he made the statements only because of Espinosa's threats of harm to himself and his family. Which version of Cooperator A's statements is true will be a matter for this Court to decide prior to sentencing Espinosa or in any post-trial litigation regarding the need for a new trial based upon Espinosa's statements. Espinosa's current Defense Counsel are the only people to have heard what Cooperator A said. Although at this time there does not appear to be a factual dispute as to the content of the call, the fact the statement is unrecorded suggests Defense could very well be essential and necessary witnesses at subsequent hearings. Rule 3.7 forbids Defense Counsel from being advocates and witnesses on this type of matter.

Even if it is determined the basic facts are uncontested, Defense Counsel are still necessary witnesses in future proceedings in this case. Threatening a witness in an effort to get him to recant trial testimony is conduct that supports a sentencing enhancement for attempted obstruction of justice under U.S.S.G. § 3C1.1. It could also be the basis for new obstruction of justice charges to be brought. As the recipients of the phone call and the only other source of evidence as to the content of the call, Defense Counsel will likely be necessary witnesses at sentencing if the guideline enhancement is deemed applicable in this case and contested by Espinosa, and they would be necessary witnesses if additional criminal charges were brought.

Their role as potential witnesses is an intractable issue under Rule 3.7 which elucidates the

9

conflict they now have under Rule 1.7. They cannot give conflict-free advice to Espinosa either on whether the evidence, as currently known, is sufficient to justify a motion for judgment of acquittal in light of the December 6th call, or on whether and how to contest an obstruction of justice enhancement at sentencing. Their position as fact witnesses in these proceedings is untenable and requires their disqualification as counsel for Espinosa in accordance with Virginia Rule of Professional Conduct 3.7.

### III.   This Court should Reconsider its December 23, 2024, Ruling Pending the Resolution of this Motion.

On December 20, 2024, Defense Counsel moved to compel the United States to disclose to them its report from the interview of Cooperator A about the December 6 phone call. ECF No. 213. This Court granted that motion on December 23, 2024, before the United States had completed its Motion and without providing the United States an opportunity to respond.

The United States fully understands it has an obligation to promptly disclose exculpatory material to defense counsel under *Brady* and its progeny and Virginia Rule of Professional Conduct 3.8, and it does not dispute that the report of interview at issue should be disclosed. Disclosure of the report was delayed because the United States believes it imperative that this Court first resolve the issue of Defense Counsel's conflict so that disclosure of the report can be made to conflict-free counsel for Espinosa. The United States was investigating its ethical obligations and in the process of preparing its Motion to Disqualify Counsel at the time this Court issued its ruling.

In light of the Motion to Disqualify and the facts presented, the United States requests this Court reconsider its ruling, or in the alternative, stay its ruling pending the resolution of this

Motion.

### IV. Conclusion

For the foregoing reasons, the Court should disqualify attorneys Sandi Rhee and Robert Feitel from further representation of Hector Manuel Espinosa and new counsel should be appointed or retained. The Court should further reconsider its ruling directing the disclosure of the report of interview to attorneys Rhee and Feitel resulting from their conflict in this case.

> Respectfully submitted,
>
> ZACHARY T. LEE
> Acting United States Attorney
>
> s/Ronald M. Huber
> Ronald M. Huber, VSB No. 31135
> Sean M. Welsh, VSB No. 89660
> Assistant United States Attorneys
> United States Attorney's Office
> 255 West Main Street, Room 130
> Charlottesville, VA 22902
> Tel:   434.293.4283
> Ron.huber@usdoj.gov

### **C E R T I F I C A T E**

I hereby certify that a true and correct copy of the foregoing has been electronically filed with the Clerk by CM/ECF system, which will send notification of such filing to all counsel of record, on this 30th day of December, 2024.

> s/Ronald M. Huber
> Ronald M. Huber